No. 110,108

In the Matter of RAY SANDY SUTTON, *Respondent*.

(316 P.3d 741)

Opinion filed January 24, 2014.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Ray S. "Sandy" Sutton*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Ray S. "Sandy" Sutton, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 1966.

On March 15, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). A supplement to the formal complaint was filed on April 25, 2013. The respondent did not file an answer. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on May 22, 2013.

The hearing panel determined that respondent violated KRPC 5.5(a) (2013 Kan. Ct. R. Annot. 630) (unauthorized practice of law); 8.4(d) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 211(b) (2013 Kan. Ct. R. Annot. 356) (failure to file answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

### "FINDINGS OF FACT

. . . .

### *"License History*

"5. The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on February 16, 1966. In May, 1966, the Missouri

Supreme Court admitted the respondent to the practice of law. After Kansas adopted continuing legal education requirements, in 1984, the respondent registered as an inactive attorney in Kansas.

"6. For many years, Interstate Bakery employed the respondent as general counsel. In 2002, the respondent retired from his position with Interstate Bakery. At that time, the respondent received an $80,000 annual pension from his former employer.

"7. In 2009, the Missouri Supreme Court issued an order suspending the respondent's license to practice law in Missouri for failing to pay his income taxes. At the hearing on the formal complaint, the respondent testified that he was unable to pay his income taxes because International Bakery became bankrupt and, as a result, he lost his annual pension.

"8. In Kansas, the respondent paid the inactive registration fee until 2012. In 2012, the respondent failed to pay the inactive registration fee and on September 14, 2012, the Kansas Supreme Court entered an order suspending the respondent's license to practice law.

### "Representation of M.C.

"9. On November 14, 2011, the Johnson County District Attorney charged M.C. with burglary, a level 7 person felony, theft, a class A nonperson misdemeanor, and criminal damage to property, a class B nonperson misdemeanor.

"10. Despite that the respondent did not have an active license to practice law, on November 30, 2011, the respondent appeared with M.C. in Johnson County District Court and entered his appearance as attorney of record for M.C. At that time the court scheduled a scheduling conference for December 28, 2011.

"11. On December 28, 2011, the respondent again appeared with M.C. The court continued the scheduling conference to January 18, 2012.

"12. On January 18, 2012, the respondent appeared with M.C. and the case was scheduled for a plea hearing for February 10, 2012. On February 10, 2012, the respondent appeared with M.C. M.C. entered a guilty plea [to] misdemeanor theft and criminal damage to property. The court sentenced M.C. to a term of 360 days in jail. After M.C. served 5 days in jail, the court placed M.C. on probation.

### "Representation of T.B.

"13. On October 6, 2011, the Leavenworth County Attorney charged T.B. with possession of a controlled substance (Hydrocodone), a level 4 drug felony, possession of a hallucinogenic drug (Botanical Incense), a class A nonperson misdemeanor, and possession of drug paraphernalia (Glass Smoking Pipe), a class A nonperson misdemeanor.

"14. Despite his lack of an active license to practice law in Kansas, the respondent represented T.B. in the pending criminal case. Specifically, on November 16, 2011, the respondent appeared on behalf of T.B. for the first appearance and entered his appearance as attorney of record for T.B. On December 16, 2011, the respondent appeared on behalf of T.B. for a status conference.

"15. On January 20, 2012, the respondent appeared with T.B. for preliminary hearing. At the preliminary hearing, the court bound T.B. over for trial. Also on January 20, 2012, the court conducted the arraignment.

"16. The court scheduled a pretrial conference for March 23, 2012. Neither the respondent nor T.B. appeared for the pretrial conference. As a result of her failure to appear, the court issued a bench warrant for T.B.'s arrest.

"17. On April 23, 2012, T.B. was arrested on the bench warrant. While still in custody, on April 25, 2012, the court conducted a hearing. The respondent appeared with T.B. at the April 23, 2012, hearing. At that time, T.B. was released on her own recognizance.

"18. On May 30, 2012, the respondent appeared with T.B. for a bond appearance. On June 20, 2012, the respondent appeared with T.B. for a pretrial conference. At that time, the court scheduled the jury trial for August 23, 2012.

"19. On August 22, 2012, Joan Lowdon, Assistant County Attorney, discovered that the respondent did not have an active license to practice law. Ms. Lowden asked the respondent about it and he acknowledged that his license was not active. After Ms. Lowden discussed the matter with the respondent, the court held a hearing. During the hearing, the following exchange occurred:

'THE COURT: Did you bring up the jury questionnaires for Mr. Sutton?

'MS. LOWDON: I—we have them in our office. I—we didn't bring up a copy. But, Judge, there's going to be something that we need to discuss.

. . . .

'MS. LOWDON: He's not licensed.

'THE COURT: What?

'MS. LOWDON: He's not licensed in Kansas. I just had a conversation with him to verify that before bringing it. He says he's not.

. . . .

'THE COURT: . . . [T.B.], at this point it appears that Mr. Sutton's not licensed to practice law in Kansas, and so, therefore, I'm going to have to just visit with you individually. It has to be—

'MR. SUTTON: Let me ask you this, Your Honor.

'THE COURT: Okay.

'MR. SUTTON: Since I'm doing it pro bono, does that make a difference?

'THE COURT: I—no it does not. You can't offer legal services whether you charge for it or not.

. . . .

'THE COURT: . . . You're either going to have to hire an attorney or seek an appointed attorney.

'THE DEFENDANT: Well, I can't afford one. That's why Sandy was helping me pro bono.

'THE COURT: All right.

. . . .

'THE COURT: So I'll continue this—I'll cancel the jury trial 'cause Mr. Sutton can't represent you tomorrow.

'THE DEFENDANT: Well, I think we were going to do a bench trial anyways.

'MR. SUTTON: Well, I can't represent—

'THE COURT: Yeah. But he can't represent you if he's not licensed. You can represent yourself, but he can't represent you. . . .'

"20.  On October 24, 2012, T.B. died. On October 25, 2012, because of the death of T.B., the court dismissed the criminal case. [Footnote: The respondent testified that while he was assisting T.B. he was able to have the felony charge reduced to a misdemeanor. The quality of the respondent's representation is not at issue in this case. The issue in this case was whether the respondent was authorized to practice law in Kansas.]

### "Disciplinary Complaints and Investigation

"21.  On August 27, 2012, Ms. Lowdon filed a complaint against the respondent. The following day, on August 28, 2012, John J. Bryant, Assistant Attorney General, filed a complaint against the respondent. Prior to Ms. Lowdon's involvement, Mr. Bryant represented the State in *State v. T.B.*

"22.  On August 27, 2012, and August 29, 2012, Ms. Baird wrote to the respondent informing him of the complaints filed against him. Ms. Baird directed the respondent to provide a written response to the complaints within 20 days. The respondent failed to timely respond to the complaints.

"23.  On October 24, 2012, Ms. Baird reminded the respondent of his obligation to provide a written response to the initial complaints filed by Ms. Lowdon and Mr. Bryant.

"24.  On November 7, 2012, the respondent filed a written response to the complaints. In his response, the respondent stated:

'I met [T.B.] in this matter and from day one, I informed him that I was appearing for [T.B.] pro bono and also disclosed my pro bono appearance to the judge and the subsequent county attorney. I never held myself out as an active member of the bar but I felt that representation of a client pro bono was not a violation of Kansas state law.'

"25.  Following the investigation, the Review Committee of the Kansas Board for Discipline of Attorneys found probable cause to believe that the respondent violated the Kansas Rules of Professional Conduct. On February 5, 2013, Ms. Baird wrote to the respondent and informed him that the Review Committee determined that his conduct violated the rules.

### "Representation of A.L.

"26.  On January 5, 2013, the Johnson County District Attorney charged A.L. with driving under the influence of alcohol, third offense, a nonperson felony. Despite that he did not have an active license to practice law in Kansas, on January

15, 2013, the respondent appeared with A.L. and entered his appearance on behalf of A.L.

"27. Even after receiving notice from Ms. Baird that the Review Committee found probable cause that he had violated the rules by practicing law without an active license, on March 7, 2013, the respondent appeared with A.L. for a scheduling conference.

### "General Representation

"28. At the hearing on the formal complaint, the respondent admitted that he represented 10-15 clients in Kansas during the period of time his license was inactive and suspended. Additionally, the respondent testified that he had likewise represented clients in Missouri after his license to practice there was suspended. As of the day of the hearing, the respondent testified that he continued to have three clients that he was currently representing in municipal courts of Missouri on traffic tickets.

"29. All representation by the respondent on behalf of clients during the period he was not licensed, including the specific counts covered by this report and otherwise, was conducted *pro bono*. The respondent utilized his legal skills for the purpose of helping people who could not otherwise afford legal counsel.

### "Conclusions of Law

"30. Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 5.5, KRPC 8.4, and Kan. Sup. Ct. R. 211, as detailed below.

### "KRPC 5.5

"31. KRPC 5.5(a) prohibits the unauthorized practice of law. The respondent practiced law when his license to do so was inactive and/or suspended. In Kansas, in order to engage in the practice of law, an attorney must be registered as an active attorney. Thus, when the respondent practiced law without an active license, the respondent engaged in the unauthorized practice of law. As such, the hearing panel concludes that the respondent violated KRPC 5.5(a).

### "KRPC 8.4(d)

"32. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). Because the respondent was not licensed to practice law, T.B.'s jury trial was continued to allow the appointment of an active attorney. The respondent's misconduct directly prejudiced the administration of justice. [Footnote: Whether the respondent's representation of the other clients, including M.C. and A.L., will impact the criminal cases is unknown to the hearing panel.] Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(d).

### "Kan. Sup. Ct. R. 211(b)

"33. The Kansas Supreme Court Rules require attorneys to file an answer to a formal complaint. Kan. Sup. Ct. R. 211(b) provides the requirement:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written answer to the formal complaint. Therefore, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

*"American Bar Association
Standards for Imposing Lawyer Sanctions*

"34.   In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"35.   *Duty Violated.* The respondent violated his duty to the legal profession to comply with the annual registration requirements and to refrain from practicing law without a license.

"36.   *Mental State.* The respondent knowingly violated his duty.

"37.   *Injury.* As a result of the respondent's misconduct, the respondent caused actual injury to the administration of justice.

"Aggravating and Mitigating Factors

"38.   Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"39.   *A Pattern of Misconduct.* For more than 10 years, the respondent represented clients without having an active license. Accordingly, the hearing panel concludes that the respondent has engaged in a pattern of misconduct.

"40.   *Multiple Offenses.* The respondent committed multiple rule violations. The respondent violated KRPC 5.5, KRPC 8.4, and Kan. Sup. Ct. R. 211(b). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"41.   *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1966. At the time of the misconduct, the respondent has been practicing law for more than 45 years.

"42.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"43.   *Absence of a Prior Disciplinary Record.* The respondent has not previously been disciplined.

"44. *Absence of a Dishonest or Selfish Motive.* The respondent's misconduct was not motivated by dishonesty or selfishness. Instead, his intent, while misguided, appears to have been purely eleemosynary.

"45. *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* After the respondent concluded his representation of T.B., he provided her with transportation to meet with her court-appointed attorney. Assisting T.B. in this way mitigated the respondent's misconduct.

"46. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* At the hearing on the formal complaint, the respondent admitted the facts that gave rise to the violations.

"47. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent provided the hearing panel with a biography which outlined service that the respondent provided. Based upon the respondent's testimony and his Exhibit A, the hearing panel concludes that the respondent was an active and productive member of the bar and provided valuable service to Metropolitan Bar Association.

"48. *Remorse.* At the hearing on this matter, the respondent apologized for his misconduct.

"49. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

*"Recommendation*

"50. Ms. Baird recommended that the respondent's license be suspended for a definite period of time. Ms. Baird further recommended that the respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219, prior to reinstatement. At the reinstatement hearing, Ms. Baird recommended that the respondent be required to establish that he has complied with all of the administrative requirements to maintain an active license in Kansas. The respondent did not make a recommendation.

"51. Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 30 days. The hearing panel further recommends that the reinstatement of the respondent's license to practice law be conditioned upon his compliance with the annual continuing legal education requirements and upon his payment of all fees required by the clerk of the appellate courts and the Kansas Continuing Legal Education Commission.

"52. Costs are assessed against the respondent in an amount to be certified by the disciplinary administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence in the record, the findings of the disciplinary hearing panel, and the arguments of the parties to determine whether the respondent violated the KRPC, and, if so, the appropriate discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he did not file an answer; he filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2013 Kan. Ct. R. Annot. 375). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 5.5(a) (unauthorized practice of law); 8.4(d) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 211(b) (failure to file answer in disciplinary proceeding) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions; respondent violated the rules of attorney conduct as alleged.

The remaining issue is the appropriate sanction to impose for respondent's violations. As noted above, the hearing panel recommended that respondent be suspended for a definite period of 30 days and that the reinstatement of the respondent's license to practice law be conditioned upon his compliance with the annual continuing legal education requirements and upon his payment of all fees required by the Clerk of the Appellate Courts and the Kansas Continuing Legal Education Commission. The office of the Disciplinary Administrator joins in the panel's recommendation for a definite period of suspension, but that office further recommends that respondent be required to appear at a reinstatement hearing

pursuant to Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407) and establish that he has complied with all of the administrative requirements to maintain an active license in Kansas before the suspension is lifted.

Those recommendations contemplate that, in order to end the period of court-ordered suspension, the respondent would have to do whatever is necessary to elevate his decades-old inactive license to active practice status. But at oral argument, respondent announced that, owing to his age, he did not intend to ever again practice law in Kansas. Accordingly, we do not condition the length of disciplinary suspension upon a reinstatement hearing. Rather, we deem it more appropriate to impose a fixed period of disciplinary suspension of 6 months from the filing date of this opinion. Thereafter, respondent will remain administratively suspended, until such time as he has complied with the requirements for reinstating his license on either an active or an inactive status. Respondent is cautioned, however, that any future unauthorized practice of law, no matter how well-meaning, will likely result in disbarment.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Ray Sandy Sutton be suspended from the practice of law in the state of Kansas, in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300), for a period of 6 months.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.